13440

*EX PARTE* HINELINE
HINELINE *ET AL.* v. DAVIS *ET AL.*

(164 S. E., 887)

*Messrs. Samuel Want* and *M. L. Smith,* for appellants,

*Messrs. Dargan & Paulling* and *Charlton DuRant,* for respondent,

June·30, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

By consent of counsel, these three appeals are consolidated and heard together, since, in a general way, the causes relate to the same subject-matter.

Dr. W. L. Galloway and his wife, Mrs. Desdemona Galloway, both deceased, aged people, without children, lived for many years in Darlington, and these causes grow out of their respective wills and an alleged contract between the two to make wills.

On July 12, 1926, Dr. and Mrs. Galloway made separate wills, whereby each gave to the other a life estate in all of

the testator's property and certain legacies to others, with the remainder to the Epworth Orphanage of the South Carolina Conference, hereinafter referred to as the Orphanage. The estate bequeathed and devised to the orphanage was to be used by the trustees of that institution in the erection of a building on the grounds of the Orphanage property at Columbia, to be known as "The Doctor and Mrs. Galloway Memorial Home." Both wills named the same persons as executors. Neither will referred to the provisions of the other nor to any agreement of any kind between Dr. Galloway and Mrs. Galloway as to the making of a will.

On December 7, 1927, Dr. and Mrs. Galloway executed separate wills, whereby each revoked all former wills, and, after providing for the payments of debts, gave each to the other absolutely all the rest and residue of his or her property. In neither of these wills was reference made to the will of the other, nor to any agreement between the testators to make a will.

In November, 1928, both Dr. and Mrs. Galloway became seriously ill, and were carried to a hospital in Florence.

On November 15, 1928, Dr. Galloway, being advised that his wife could live but a few hours, made another will, whereby he revoked all former wills. Therein he gave special legacies in the amounts and to the persons provided for in the wills of both himself and wife of July 12, 1926. He then gave the rest and residue of all his property to the Orphanage to be used for the erection of a building to be known as "The Doctor and Mrs. W. L. Galloway Memorial Home."

Contrary to the opinions and expectations of the attending physicians, Mrs. Galloway did not die so soon, but lived for around two years, surviving her husband, who died on March 5, 1929.

Dr. Galloway's will of November 15, 1928, was admitted to probate in the Probate Court for Darlington County on

March 26, 1929, and letters testamentary were issued to O. B. Davis, one of the persons named in that will as executor. The other two persons named as executors, Judge E. C. Dennis and L. M. Lawson, Esq., declined to qualify.

On March 23, 1929, eighteen days after the death of Dr. Galloway and three days prior to the probate of his will, Mrs. Galloway was adjudged to be a person *non compos mentis* in the Probate Court of Darlington County, and W. P. Du Bose was appointed as her committee. He continued in that capacity until the time of Mrs. Galloway's death, and has not yet been discharged.

On September 3, 1930, while Mrs. Galloway was still mentally incapacitated and in the hospital, an action was instituted in the Court of Common Pleas of Darlington County in the name of Mrs. Galloway and Du Bose, as her committee, as plaintiffs, against Davis, the executor of the will of Dr. Galloway, as defendant. J. R. Lyles was appointed as guardian *ad litem* of Mrs. Galloway, but as such guardian was not made a party plaintiff in the cause. and it seems no pleading was filed on his part. The complaint in that action set forth the adjudication of Mrs. Galloway as a person *non compos mentis,* the appointment of Du Bose as her committee; that Dr. and Mrs. Galloway made their respective wills on July 12, 1926, pursuant to an agreement to make certain wills; that the wills of December 7, 1927, were made pursuant to a mutual agreement on the part of Dr. Galloway and Mrs. Galloway to revoke their wills of July 12, 1926, and to execute new wills, each devising and bequeathing.all his or her property to the other; and that the survivor should then execute a will, providing for all the bequests contained in their separate wills of July 12, 1926, and that the residue of the property of such survivor, including that received under the will of the one first dying, should be bequeathed and devised to the orphanage for the establishment of "The Galloway Memorial Home"; and that in November, 1928, Dr. and Mrs. Gallo-

way were moved to a hospital in Florence, and while there, the life of Mrs. Galloway being despaired of, and Dr. Galloway knowing her condition, and in expectation of her early death, and with the belief that he would survive her, and being desirous of carrying out the contract between himself and his wife, he executed, on November 15, 1928, a new will, by the terms of which he made bequests to the persons named in the wills of Dr. and Mrs. Galloway of July 12, 1926, and in the amounts provided in those wills, with a gift of the rest and residue of his property, including the amount left to him by his wife at her death, to the Orphanage; that the entire amount of both estates, after the payment of the specific legacies provided for in the will of Dr. Galloway, should be held and impressed with a trust for the benefit of Mrs. Galloway during her life, and after her death to be paid to the Orphanage. The complaint in the action prayed that the alleged contract between Dr. Galloway and Mrs. Galloway should be established and carried out by the Court.

Davis, the executor of Dr. Galloway, the defendant in the action, filed his answer admitting the allegations of the complaint and joined in the prayer. The Orphanage was not made a party to that action.

On September 6, 1930, just three days after the institution of the action, the cause was referred to the Probate Judge of Darlington County, as *ex officio* master, to take testimony as to the matters and things alleged in the pleadings, and to report his findings both of law and of fact.

A reference was held on September 8, 1930, at which testimony was taken. The guardian *ad litem* of Mrs. Galloway was not present at the reference. The defendant Davis, as executor of the will of Dr. Galloway, was not represented by counsel. On the same day, the referee made his report, recommending that the alleged contract between Dr. and Mrs. Galloway be confirmed and established by a proper decree of the Court, and that the same be held to be bind-

ing upon Mrs. Galloway, her committee, and the executor of the will of Dr. Galloway; that the executor of Dr. Galloway's will be ordered to pay the legacies provided in his will: that the rest and residue of his estate be held in trust by the executor for the use and benefit of Mrs. Galloway during her life, and after her death the balance be paid over to the Orphanage; that the committee of Mrs. Galloway be authorized to use so much of her estate as might be necessary for her support, etc., during her life, and after her death he be directed to turn the balance over to the Orphanage; that the last will of Mrs. Galloway be declared a nullity; that her estate, after the payment for her support, be paid over to the Orphanage in accordance with the agreement alleged to have been made.

On September 12, 1930, Judge Grimball, presiding in the Court of Common Pleas for Darlington County, signed an order, consented to by the executor of Dr. Galloway and the guardian *ad litem* of Mrs. Galloway, confirming the report of the Judge of Probate in all respects, and declaring therein that the recommendations made in the report be carried into effect.

That action is referred to in the transcript of record and in the briefs of counsel as the "contract case," and we shall adopt that designation.

Mrs. Galloway died in November, 1930. At the instance of the appellants here, her will of December 7, 1927, was duly admitted to probate in the Probate Court for Darlington County on March 30, 1931.

About March 31, 1931, appellants filed, in the Court of Common Pleas of Darlington County, their petition in the "contract case," reciting, among other things, that the appellant Susie Jacobs Hineline was a niece of the whole blood of Mrs. Galloway, and that the appellant Lessie O. Welch was a niece of the half blood of Mrs. Galloway and a creditor of Mrs. Galloway's estate, and they prayed that the decree of Judge Grimball of September 12, 1930, be

opened and vacated. In that petition, the Orphanage was named as a party respondent.

After a hearing, Judge Dennis, on April 30, 1931, passed an order dismissing the petition of Mrs. Hineline and Mrs. Welch, and refused to open the decree. From that order, Mrs. Hineline and Mrs. Welch have appealed to this Court.

Included in the assets of Mrs. Galloway were a house and lot in the City of Darlington, long occupied as the home of Dr. and Mrs. Galloway. About April 13, 1931, Mrs. Hineline, claiming to be the sole heir at law of Mrs. Galloway, brought her action in the Court of Common Pleas for Darlington County against the Orphanage to quiet the title of Mrs. Hineline to the house and lot, charging that the Orphanage claimed title to and possession of the property under the terms of the decree of Judge Grimball in the "contract case." The Orphanage answered this complaint, and moved for the appointment of a receiver. On May 15, 1931, Judge Dennis passed an order appointing Du Bose, who had formerly been appointed as the committee of Mrs. Galloway, as the receiver. From that order of Judge Dennis, Mrs. Hineline has appealed to this Court. This case is referred to as the "action to quiet title."

On April 13, 1931, Mrs. Hineline filed her petition, in the Probate Court of Darlington County, asking that the property of Mrs. Galloway be delivered to the executor of her will, which, as before stated, was probated on March 30, 1931. By order of the Probate Judge, Du Bose, as committee of Mrs. Galloway, and the Orphanage, were required to show cause in this proceeding. An order was passed May 15, 1931, requiring all the personal property of Mrs. Galloway to be delivered to her executor. The Probate Judge held, however, that he was bound by the decree of the Court of Common Pleas in the "contract case." From the order of the Probate Judge, Mrs. Hineline appealed to the Circuit Court, but that Court affirmed the order of the Probate Court. From that order of the Circuit Court, Mrs.

Hineline has appealed to this Court. This case is referred
to as the "Circuit Court decision on appeal from the Probate
Court."

In the record, it is disclosed that the final report of the
committee of Mrs. Galloway showed receipts of the personal
property of her estate amounted to nearly $20,000.00; that
his disbursements were a little over $7,000.00, leaving a
balance on hand of approximately $12,000.00; that her real
estate was estimated at $10,000.00. It also appears that the
personal estate of Dr. Galloway was appraised at a little
more than $30,000.00, and that the legacies provided for in
his will, ordered to be paid in the decree of Judge Grim-
ball, which presumably have been paid, totaled $11,000.00.

All the suits and proceedings instituted by the appellants,
to which we have referred, were evidently instituted for
only one purpose, namely, to determine whether the ap-
pellant, Mrs. Hineline, as an heir at law of Mrs. Galloway,
and the appellant, Mrs. Welch, as a creditor of Mrs. Gallo-
way's estate, are precluded from asserting their respective
rights pertaining to the estate of Mrs. Galloway on account
of the decree of Judge Grimball in the "contract case."

In the three causes, there are 22 exceptions, and the
Orphanage, as respondent in the "contract case," has sub-
mitted two additional grounds upon which it asks that
the decree of the Court in that case be sustained.

Under the view we take of the case, it is not necessary
to consider all the various matters raised by the exceptions,
and the supporting grounds, in detail, or to go into the
able, interesting, and lengthy arguments of the counsel for
the interested parties touching many incidental questions.
Neither do we think that we are here and now concerned
in any way with the existence or non-existence, the validity
or invalidity, of the alleged contract to make wills on the
part of Dr. Galloway and his wife. The main question, in
fact the only one, for our immediate attention, is this: "Are
the appellants bound by the decree of Judge Grimball in

the 'contract case'?" If so, the simplest and proper thing for this Court to do is to affirm all the orders and decrees appealed from. If they are not so bound, then the orders and decrees in question should be reversed, and the appellants be given an opportunity to present their cause in the lower Courts.

We have read with care the record in the "contract case." That proceeding, without doubt, was advised and brought by attorneys of high standing, and the characters of those attorneys and the laymen interested in the matter are such as to cause this Court to think that the purpose sought to be accomplished was an excellent one. But we are absolutely unable to find any justification for the decree rendered in the "contract case."

We shall not go to the trouble to examine and review the many, many authorities cited by counsel for both sides, for we are confident that a few observations will be sufficient to sustain our view that the appellants should have their day in Court.

Let it be observed that the complaint in the "contract case" alleged that Dr. and Mrs. Galloway entered into a solemn verbal contract in December, 1927, to do specific things, namely, to execute new wills revoking their wills of July 12, 1926, whereby each would give to the other his or her entire property absolutely; that the survivor would then make a will, wherein he or she (the survivor) would provide for the identical bequests made in their respective wills of July 12, 1926, and give the residue of the property belonging to each of them to the Orphanage for the erection of "The Galloway Memorial Home," and the complaint prayed the establishment and enforcement of that alleged contract.

If there was such a contract, as alleged, and that contract was to be established and enforced, then the ordinary position for the Court to have taken was to declare the will of Dr. Galloway of November 15, 1928,

null and void, on the ground that it was not intended to operate as his last will, except in the event that he should survive Mrs. Galloway. By the terms of the alleged contract, the survivor was to be the absolute owner of the other's property, and was to execute a new will carrying out the contract as to the bequests and the provisions for the Orphanage. Under this view, the will of Dr. Galloway of December 7, 1927, should have been declared his last will and testament, and his entire estate should have been turned over to Mrs. Galloway.

While purporting to seek the establishment of the alleged contract, the complaint sought first the payment of the specific legacies, and then demanded and prayed that the remainder of the property be impressed with a trust, etc. If the alleged contract was binding and enforceable, then Dr. Galloway was precluded from making the will of November 15, 1928, except and unless he survived Mrs. Galloway, which he did not do.

The fact that Mrs. Galloway was mentally incapacitated to make a will did not alter the provisions of the alleged contract. If Dr. Galloway's property, under the alleged contract, belonged to Mrs. Galloway as the survivor, then the Court was wholly without authority to order the payment of the legacies during the lifetime of Mrs. Galloway. She, and she alone, was entitled to the entire estate of Dr. Galloway, and not simply entitled to the residue after the payment of the legacies.

During the lifetime of Mrs. Galloway, neither the specific legatees nor the Orphanage, as residuary legatee, had any interest in the property of Dr. Galloway.

Until the death of Mrs. Galloway, it could not be judicially determined what her last will and testament was. The fact that she was at the time of the institution, pendency, and conclusion of the "contract case" mentally incapacitated was no ground to justify her committee in instituting that action. While the physicians then thought, with apparent

good reason, that she was permanently incapacitated, that was at its best only a matter of opinion. It was their opinion in November, 1928, that she would live only a few hours, or a few days at most, but, as a matter of fact, she lived for around two years.

Had Mrs. Galloway regained possession of her mental faculties, would she have been bound by the decree of the "contract case"? Clearly not.

It was the duty of the committee of Mrs. Galloway and the Court to preserve her property, not to give it away. Had she regained her mental faculties and denied the existence of any such contract, there can be no doubt that she could have disposed of her property as she pleased so to do, unless restrained in the proper manner by a Court of Equity upon clear proof of a contract to dispose of the property in a specific manner or to specific parties.

If there was such a contract, as was alleged, and that contract be enforceable under the law, the property of Mrs. Galloway, including that received, or that she was entitled to have received, under the contract, from her husband's estate, belonged, after her death, but not before, to the Orphanage. If there was no such contract, or if the contract was not legally enforceable, then the Orphanage was not entitled, and is now now entitled, to any of Mrs. Galloway's property, since by the terms of her last will she made no provision for the Orphanage.

Since the husband of Mrs. Galloway, as the sole beneficiary under her last will, pre-deceased her, and the will made no other disposition of her property, her property passed as intestate property in the absence of the establishment of the alleged contract. *Prima facie,* her property goes to her heirs at law. The vital question then is, "was there such a contract as alleged in the complaint, and, if so, is it enforceable?" That question concerns those who would take the property in case of the failure of those who assert the alleged contract to properly establish it.

The effect of the "contract case" was to annul the will of Mrs. Galloway and to administer her estate during her lifetime, and make a will for her in accordance with the ideas of her committee and the executor of her husband's estate as to what Dr. Galloway and his wife wished to be done. While the decree of the Court required the property to be held by the committee of Mrs. Galloway until her death for her benefit and then to be delivered to the Orphanage, the right to succeed to the property after Mrs. Galloway's death was sought to be definitely and finally fixed.

It is urged by the respondents, with which position the appellants do not agree, that the proceedings in the "contract case" did not result simply in a consent decree, because testimony was taken and a report made by the master. It must be admitted from the record that the case was not really contested, and the report of the master, and the decree of the Circuit Judge based on that report, conformed to the wishes of the committee of Mrs. Galloway and the executor of Dr. Galloway's will. To all intents and purposes, it was nothing but a friendly suit to carry into effect the plan which these estimable gentlemen thought at the time met the wishes and desires of both Dr. and Mrs. Galloway.

It is contended further on the part of the respondents that Mrs. Galloway being a party to the "contract case" was bound by the judgment therein rendered, and therefore her heirs at law are now bound by such judgment. It seems to us that Mrs. Galloway's heirs at law would be bound by the judgment, if Mrs. Galloway had been in possession of her mental faculties. But it is impossible to conceive how the committee of a person of unsound mind could institute an action for the express purpose not to preserve the property of the ward, but to divest her of the same and thereby bind her. Had Mrs. Galloway regained possession of her mental faculties, would she have been

bound by the disposition of her property thus gratuitously made by the Court? If this Court would hold that, it would mean a holding that the Court may make a will for a person of unsound mind without any opportunity for the heirs at law of such person, or her legatees and devisees in a former will, to contest the alleged agreement upon which the Court's decree was predicated.

The alleged agreement was not to take effect, so far as the legacies were concerned, until after the death of the survivor. Mrs. Galloway being the survivor, until her death she was entitled to her property. So far as the Court could determine, she might have regained possession of her mental faculties, and, if she did so, she, of course, had the right to execute another will. Until her death, the Court was without jurisdiction to determine the disposition of her estate.

Since the will of Mrs. Galloway failed to dispose of her property, her husband having predeceased her, the property passes as intestate property, unless it was controlled and governed by the alleged contract. The burden of establishing that alleged contract was, and is, upon the Orphanage, not upon the committee of Mrs. Galloway. Mrs. Galloway's committee, during her lifetime, was the custodian of her property, charged with the usual duties attaching to the office of a committee. After the death of Mrs. Galloway, and after the probate of her will, there could have been, and now can be, determined if she failed to carry out the alleged contract. The Orphanage, after her death, if it desired to do so, was entitled to the opportunity of asserting its rights under the alleged contract. The contest, properly and necessarily, would be between her heirs at law and the Orphanage. During the settlement of such a contest, the executor of Mrs. Galloway's will would be the stakeholder.

It is true, as contended by the respondents, that the heirs at law and creditors of Mrs. Galloway were not either neces-

sary or proper parties to the "contract case." But the "contract case" was not a proper suit. To say the least of it, it was entirely premature. As Mrs. Galloway was living at the time of that suit, of course, she had no heirs. But she did have heirs at the time of her death, and those heirs are entitled to their day in Court, for, under the law, they are entitled to inherit her property, unless the Orphanage can establish the alleged contract.

It is the duty of Courts to protect the interests and rights of minors and persons *non compos* whose property, under the law, has been intrusted to their care. To divest them of any right, the proceeding for that purpose must be entirely legal without any question concerning it. These principles have been so fully recognized and declared by this Court that it seems useless to cite authority to sustain them. We call attention, however, to our recent case of *Simpson v. Doggett,* 159 S. C., 294, 156 S. E., 771, 773. That case, relating to the rights of a minor not properly protected by the guardian *ad litem,* is applicable here. The language in concluding the opinion in that case may be well repeated now, and it was as follows: "We cannot resist the conclusion that the judgment first rendered in the case was colorable; that the rights of the appellant (the infant there), whatever they may have been, were not properly looked after by her guardian *ad litem,* an officer of the Court, as he was in duty bound to do; and that in the interest of equity and justice that judgment should be vacated."

It necessarily follows, when the rights of infants and persons *non compos mentis* have not been legally protected, the heirs at law and others succeeding to the property rights of such persons, under the law, are entitled to a full and fair opportunity to assert their claims.

The effect of our decision is not to be understood as holding that the Orphanage is not entitled to the property it seeks. It may be morally and legally entitled to it. If it can

establish the contract it claims, it certainly will be. That great institution, created and maintained for the purpose of protecting orphans, innocent people, does not desire, of course, the property, unless its right to it be clearly shown.

The judgment of this Court is that the appeals be sustained, and the causes remanded to the Court of Common Pleas for Darlington County for further proceedings not inconsistent with the views herein expressed.

MESSRS. JUSTICES STABLER and BONHAM concur.

MR. JUSTICE CARTER concurs in result.